LAMSON CONSOLIDATED STORE–SERVICE CO. v. CHAMBERLIN.

(Circuit Court, D. Vermont.   March 30, 1900.)

PATENTS—ANTICIPATION—STORE-SERVICE APPARATUS.

The Goodfellow patent, No. 493,621, for a store-service apparatus, claims 1, 2, 3, 5, and 13, covering the method of propelling a carrier along a way or track by means of a flexible cord or device running along the track under the upper wheels of the carrier and over pulleys above, or over the under wheels of the carrier and under pulleys below at each end, which by being pulled over the pulleys separates itself from the way, causing the carrier to move from one end of the way to the other, were not anticipated, and are valid.

In Equity.   Suit for infringement of a patent.   On final hearing.

J. Steuart Rusk and M. B. Phillipp, for plaintiff.
W. S. Kerr, for defendant.

WHEELER, District Judge.   This suit is brought upon patent No. 493,621, applied for June 4, 1885, dated March 14, 1893, and granted to John H. Goodfellow, assignor by mesne assignments to the plaintiff, for a store-service apparatus for conveying packages between the clerks' station and the cashier's desk on wheeled carriers, suspended on a track or way, and propelled by a flexible cord or device running along and from the track under the upper wheels of the carrier and over pulleys above, or over the under wheels of the carrier and over pulleys below, at each end, which, by being pulled over the pulleys pressing against and along the face of the wheels, separates itself from the way, and moves the wheels forward, carrying the body of the conveyor either way, from end to end.   The specification describes a two-part elongated wedge at the ends of the way for stopping and retaining the carrier, and says:

"The way may be inclined, the propeller acting to force the carrier up the same until it is arrested by the wedge or stop; the carrier being returned partly by the action of the propeller at that end, and partly by gravity."

There are 14 claims.   Those alleged to have been infringed by the defendant are:

"(1) The combination, in a store-service apparatus, with a way, and a wheeled carrier movable upon the way, of a flexible line extending along the way, and adapted to engage with the carrier and propel it along the way by the progressive separation of the flexible line from the way, substantially as set forth.   (2) The combination, in a store-service apparatus, with a way and a wheeled carrier movable upon the way, of a bendable propeller adapted to engage with the carrier and propel it along the way by the progressive separation of the propeller and the way, which carrier resists such separation during such action, substantially as set forth.   (3) The combination, in a store-service apparatus, of a wheeled carrier, a way, and a propeller leading between the wheels of the carrier, said propeller adapted to engage with carrier and propel it along the way by the progressive separation of the propeller and way, substantially as set forth."   "(5) The combination, in a store-service apparatus, of a way, a wheeled carrier adapted to travel from end to end on said way, a stop for holding the carrier in the position at which it is arrested, and a propeller extending along the way, and adapted to engage with the carrier and propel it along the way by the progressive separation of the propeller from the way, substantially as set forth."   "(13) The combination of the

way, a propelling cord or line secured at one end of the way, and movable at the opposite end from the way, and a carrier provided with two sets of wheels, one above and the other below the way, substantially as and for the purpose set forth."

English patent No. 737 was granted to Frederick Octavius Palmer, March 10, 1869, for an apparatus for carrying goods or passengers from one place to another, and especially across rivers and glens, consisting of a car hung to the axis of a pulley or pulleys running on a line or lines of wire, chain, rope, or other material, "caused to travel to and fro from end to end of such line by bringing the line into an inclined position, so that the car may descend along it by gravitation"; and, "in order to stop the car when it has descended along the inclined line or lines, the car might be caused to run upwards for a short distance on another line or lines rising up from the line or lines along which the car has descended." A drawing shows a line rising up from the one carrying the car, running over pulleys and suspending a weight at the outer end. This is relied upon now as an anticipation of this invention. The rising line there is not, however, a propeller, but a retarder, and is not described as, nor is it capable of use, as constructed, without more, as, a propeller. It could be used as such by substituting a handle for the weight, or perhaps by adding a handle, and is a step towards Goodfellow's invention; but others were necessary to accomplish it, which neither Palmer nor any one else appears to have taken before Goodfellow. George C. Blickensdorfer filed an application October 26, 1885, for a patent on an apparatus for this purpose; and an interference appears to have been declared November 16th between claims of his and of Goodfellow and to have been suspended for their rejection on references to Palmer's patent. Samuel Barr filed an application October 11, 1886, for mechanism for distending the wires, and for a spring catch, for which patent No. 357,449 was granted February 8, 1887. Goodfellow, as assignor to plaintiff, filed an application January 25, 1888, between which and Barr's patent an interference was declared; and January 27, 1888, an application for two separate propeller wires on opposite sides of the track, and a double-wheeled carriage, on which patent No. 381,-545 was granted April 24, 1888; and another for a track with a wedge-shaped arm extension at each end, on which patent No. 410,239 was granted September 3, 1889. The interference came on before Commissioner Simonds, who, in deciding it, May 20, 1892, compared the claims, quoting from Barr's specification, and said:

"These remarks lead to the conclusion that the interference issue expresses a construction which is not claimed in said claims of the Barr patent. Nevertheless it seems best to determine the question of priority of invention upon the issue presented, regardless of the fact that such issue and Barr's claims are not identical. Goodfellow's application of June 4, 1885, had a certain Fig. 4 of drawing, and the following are extracts from the specification: 'With these ends in view, I provide * * * the combination of a flexible line or propelling device with the way, extending the length thereof. * * * Fig. 4 shows a side elevation of the application of my propeller to a horizontal way and a carrier thereupon, provided with antifriction wheels to engage the propeller from beneath the way. * * * The same references indicate the same parts in all the figures. In the drawing, F represents the bendable propeller, which may be a flexible cord or strap, or any equivalent device of any desirable bendable material, and extending along the way for a

part or the whole of its length, and attached to or near the way as at j.' The construction thus described embodies everything called for in the interference issue, with the exception that only one wire is moved in order to effect a separation of the two wires and propel the carrier from the station. As to that construction, Goodfellow is the first inventor, because it is disclosed in his application of June 4, 1885, which antedates the making of the invention on the part of Barr. The distinction between moving one wire and moving two may or may not be material, in a mechanical and patentable sense. No opinion is expressed upon that point. Its presence in the issue cannot be ignored without doing unwarrantable violence to the plain meaning of a common word. It must be accepted as a feature of the issue. With it accepted as a part of the issue, priority of invention must be and is awarded to Barr."

This finding may not be conclusive, outside the patent office, of the priority of Goodfellow as to propelling the carrier by the means shown in his first application; but it is the end of the interference proceedings, and does show that nothing in them adjudged away that priority. The delay in that office is said, however, to have been caused by his abandonment of this first application, and the taking out of the patents on the subsequent ones before taking out this is said to have so superseded this as to make it void. Of course, there cannot be two patents at different times for the same thing, to the same or different persons, and both be valid. The prior patent to the same person would of itself avoid the subsequent one, although the latter should be granted upon a prior application. But these patents do not appear to be for the same invention. The intermediate ones are for differences from and improvements upon that of Goodfellow's first application and last patent. Necessarily the later application somewhat described the apparatus of the first, but they do not claim it, nor so describe it as to of themselves show it to be abandoned. These claims for this mode of propelling the carrier seem, upon this consideration of them, to be valid. The defendant uses this method of propelling a carrier up an inclined way, to run back by gravity. He does not use the elongated two-part wedge of the specification and other claims for retaining the carrier at either end. It is said that without something to retain the carrier at the ends the apparatus would be inoperative, and that the wedge must be read into the claims for that purpose, or the claims must be held void, as for an inoperative thing. The invention covered by these claims is, however, this mode of propulsion, of which Goodfellow seems clearly to have been the first inventor, and by his persistence in the patent office not to have abandoned. Palmer came near it, as for a retarder, but not near enough to see its use as a propeller, and took the clumsy mode of raising and lowering alternately each end of the way to have gravity move the carrier instead. No one else seems to have come so near to it as Palmer before Goodfellow. There were prior carriers, but none of them had anything resembling this as a mode of propulsion. The claims of a patent distribute the parts of the invention described in the specification intended to be covered by each, and these claims seem to well distinguish this part of this patented invention from the other parts without drawing them into it. The right to it does not appear to have been lost, and the defendant appears to have taken it. Decree for plaintiff.